UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
———

DONNELL WILLIAMS,

              Plaintiff,          Case No. 1:19-cv-1102

v.                                   Honorable Robert J. Jonker

UNKNOWN EDLINGER et al.,

              Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), further requires the Court to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, without prejudice, Plaintiff's claims against Defendants Allen, Farrell, Puchase,[1] Platte, Rideout, Morris, Kohl, Unknown Party, Fears, Becher, Beecher, Neimeic, Maiga, Leonard, Smith, Rewerts,

---

[1] Defendant Puchase's name is alternatively spelled as "Purchase" in the complaint. (*See e.g.,* Compl., ECF No. 1, PageID.8.) This opinion adopts the spelling provided in Plaintiff's list of Defendants. (*See id.*, PageID.3.)

Schiebner, Winger, Pung, Garrod, Washington, Carlson, Mitchell, and Harris because they are misjoined. The Court will also dismiss, with prejudice, Plaintiff's Eight Amendment claims against Defendants Edlinger and Ray for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues DRF Correctional Officers Unknown Edlinger, Unknown Ray, Unknown Allen, Unknown Farrell, Unknown Rideout, and Unknown Kohl; PC Unknown Puchase; Sergeants Unknown Platte, Unknown Morris, Unknown Maiga, Unknown Leonard, and Unknown Garrod; Inspector Unknown Party; Lieutenant Unknown Fears; Grievance Coordinator Unknown Becher; Resident Unit Managers (RUMs) Unknown Beecher, and Unknown Neimeic; Hearing Investigator K. Smith; Warden Randee Rewerts; Deputy Warden Unknown Schiebner; Assistant Deputy Wardens Unknown Winger and Unknown Pung; MDOC Director Heidi Washington; MDOC PREA Manager C. Carlson; MDOC PREA Coordinator Mary Mitchell; and ALJ Hearing Officer Unknown Harris.

Plaintiff has been an active litigant in the Western District of Michigan. In the instant complaint, Plaintiff alleges approximately three dozen discrete events from September 8, 2019, to December 18, 2019, which involve the 26 Defendants to varying degrees.

Plaintiff alleges he had a job as an aide and wheelchair pusher for his bunkmate. On the morning of September 11, 2019, while Plaintiff was eating in the JPay room with his bunkmate, Defendant Edlinger entered and said to Plaintiff, "You that motherfucker Williams, I been hearing about that filed the grievances on my co-workers RUM Stevenson, PC Fleisher, and

2

c/o Sanchez, I will be taking your wheelchair job, and go and dump your tray." (Compl., ECF No. 1, PageID.8.) Plaintiff finished his food elsewhere and returned to assist his wheelchair-bound bunkmate who had remained behind in the JPay room. When Plaintiff entered the room, Defendant Ray instructed Plaintiff to go to his cell and lock down. Plaintiff attempted to inform Defendant Ray of his job as an aide and wheelchair pusher to his bunkmate. In response, Defendant Ray explained that his order to lock down was a direct order and refused Plaintiff's request to call a shift commander. Plaintiff lost his position as an aide and wheelchair pusher.

Plaintiff further lists, in chronological order, the events of which he complains. These events are summarized below, however, they have been reorganized to improve clarity.

Much of the complaint relates to Plaintiff's filing of grievances or his hearings on various issues. On at least 11 occasions, Plaintiff filed what he calls "staff corruption grievances" against DRF and MDOC supervisors, alleging cover-ups and failures to properly supervise personnel. (*See id.*, ¶¶ 6, 7, 9, 11, 13, 16, 24, 25, 28, 31, 36.) Plaintiff also filed complaints under the Prison Rape Elimination Act (PREA). (*See id.*, ¶¶ 10, 12, 14, 24, 30, 32.) Plaintiff asserts that he was called out of his cell on multiple occasions for interviews or hearings related to his various misconduct charges, grievances, and PREA complaints. (*See id.*, ¶¶ 8, 12, 27, 29, 30, 32, 33, 34, 35.)

Although Plaintiff declined to participate in several of the grievance and misconduct hearings mentioned above, he alleges that during one hearing, on September 19, 2019, an unknown sergeant threatened to have Defendant Ray or Edlinger shake down his area, and his area was indeed shaken down later that day. On another occasion, Defendant Edlinger reviewed Plaintiff on a class III misconduct, including directing Plaintiff to "step up[,] Sweetheart, I don't bite." (*Id.*, PageID.11 ¶ 10.) At a hearing on September 26, 2019, Plaintiff requested Defendant

3

Puchase recuse himself from hearing the misconduct charge, and Defendant Puchase responded, "I will be sending your dick sucking fuck boy ass back to URF, so they can kill your ass this time." (*Id.*, PageID.11 ¶ 12.) At a case status conference on November 14, 2019, connected to one of Plaintiff's other actions, Defendant Puchase and PC Fleisher sat in with Plaintiff, allegedly to intimidate him. On November 28, 2019, Defendants Ray, Allen, and Farrell, with an unknown sergeant called Plaintiff out for an interview related to one of Plaintiff's grievances. Plaintiff alleges that he was informed that the sergeant was part of a special project with "the Director, and Warden," and "that they will be setting Plaintiff up, and putting Plaintiff in segregation for filing civil claims against [the] Director, and Institution." (*Id.*, PageID.16 ¶ 29.) On December 15, 2019, Defendants Ray, Allen, Farrell, and Leonard called Plaintiff out for an interview related to another of Plaintiff's grievances. After refusing to participate, Plaintiff alleges that Defendant Leonard threatened to put Plaintiff in segregation, slammed the cell door, and then wrote a false misconduct charge against Plaintiff.

Interspersed throughout the complaint are allegations of Defendants' other conduct. On September 8, 2019, Defendant Allen shook down Plaintiff's area, which included dumping Plaintiff's legal paperwork. On September 11, 2019, Plaintiff requested legal supplies be provided to him because he was on indigent status, but he failed to receive from Defendant Puchase what he requested. Defendant Allen ordered Plaintiff to lock down on September 14, 2019, and Defendant Farrell shook down Plaintiff's area in retaliation for Plaintiff's grievance with Defendant Edlinger. Defendant Farrell told Plaintiff that he would continue destroying Plaintiff's area because Plaintiff had filed a step 1 grievance against Defendant Farrell's co-workers. Defendant Edlinger shook down Plaintiff's cell on October 14, 2019, and again on November 13, 2019. On November 14, 2019, Defendants Allen and Edlinger called Plaintiff an assortment of

4

vulgar names, allegedly because Plaintiff called the PREA hotline to file complaints on Defendants Edlinger and Puchase.  On November 15, 2019, after Plaintiff raised concerns and threaten an access-to-the-courts claim against Defendant Garrod, Defendant Garrod shook down Plaintiff's cell and wrote Plaintiff up for misconduct.  On November 20, 2019, Defendant Ray patted down Plaintiff and told him that he was going to have Defendant Farrell shake down Plaintiff's cell.  Approximately five minutes later, Defendant Farrell shook down Plaintiff's cell.  Plaintiff alleges that Defendant Farrell then patted down Plaintiff for prurient purposes.

Plaintiff seeks damages and injunctive relief.

## II.    Misjoinder

Plaintiff has joined 26 Defendants in this action connecting a series of discrete events during the span from September 8, 2019, to December 18, 2019.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

5

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, [sic] and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004) (discussing purpose of PLRA). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126,

1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000)

7

(denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d

8

at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

The Court therefore will look to Plaintiff's first set of factual allegations and to Plaintiff's first named Defendant in determining which portion of the action should be considered related. Defendant Edlinger is the first defendant listed in the complaint. (Compl., ECF No. 1, PageID.1.) The first allegation is of Defendant Allen shaking down Plaintiff's cell, allegedly in retaliation, but Plaintiff asserts that he did not file a grievance about the incident. (*Id.*, PageID.8 ¶ 2.) Defendant Edlinger, with Defendant Ray, is further referenced in the earliest conduct described in the complaint for which Plaintiff alleges he filed a grievance. (*Id.*, PageID.8-9.) Plaintiff's allegations connect no other Defendant except Ray to the first transaction or occurrence involving Plaintiff and Defendant Edlinger. As a result, none of the other 24 Defendants is transactionally related to Plaintiff's first claim against Defendant Edlinger. Moreover, it is clear that no question of law or fact is common to all Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B).

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of Plaintiff's actions against the remaining 24 defendants occurred since early September 2019, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and dismiss Defendants Allen, Farrell, Puchase, Platte, Rideout, Morris, Kohl, Unknown Party, Fears, Becher, Beecher, Neimeic, Maiga, Leonard, Smith, Rewerts, Schiebner, Winger, Pung, Garrod, Washington, Carlson, Mitchell, and Harris from the action, without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

### III.    Future Filings

As noted above, Plaintiff has been a frequent litigant recently in the Western District of Michigan, filing at least six cases, including the instant case, since August 2018. *See Williams v. Loomis et al.*, No. 1:19-cv-870 (W.D. Mich.); *Williams v. Washington et al.*, No. 1:19-cv-869 (W.D. Mich.); *Williams v. Stevenson et al.*, No. 1:19-cv-863 (W.D. Mich.); *Williams v. Woodin et al.*, No. 1:19-cv-721 (W.D. Mich.); *Williams v. Washington et al.*, No. 2:18-cv-144 (W.D. Mich.). Plaintiff has had multiple cases dismissed because they were frivolous, malicious, or failed to state a claim. *See Williams v. Washington et al.*, No. 1:19-cv-869 (W.D. Mich. Jan 17, 2020); *Williams v. Stevenson et al.*, No. 1:19-cv-863 (W.D. Mich. Jan 17, 2020); *Williams v. Loomis et al.*, No. 1:19-cv-870 (W.D. Mich. Dec. 20, 2019).

Plaintiff has also filed complaints that alleged discrete claims over substantial periods against numerous prison officials without any question of fact or law common to all of the

10

defendants. *See Williams v. Woodin et al.*, No. 1:19-cv-721, 2019 WL 4593512, at *5 (W.D. Mich. Sept. 23, 2019); *Williams v. Washington et al.*, No. 2:18-cv-144, 2018 WL 6190497, at *2-6 (W.D. Mich. Nov. 28, 2018); *Williams v. Hill et al.*, No. 2:14-cv-206, 2014 WL 6452797, at *1-2 (W.D. Mich. Nov. 17, 2014). In the most recent of these cases, the Court warned Petitioner about misjoinder and cautioned "that he must limit all future actions to claims and Defendants that are transactionally related to one another." *Williams v. Woodin et al.*, No. 1:19-cv-721, 2019 WL 4593512, at *5 n.1 (W.D. Mich. Sept. 23, 2019). The Court repeats the warning here and will continue to hold Plaintiff to the joinder rules that apply to all civil litigants.

## IV. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges violations arising under the First and Eighth Amendments to the U.S. Constitution.

### A. First Amendment Retaliation

Plaintiff has alleged that in response to his filing of grievances and law suits, Defendants Edlinger and Ray violated the First Amendment because they: (1) participated in removing Plaintiff's position as an aide and wheelchair pusher; and (2) shook down Plaintiff's cell, area, or person.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Upon initial review, Plaintiff has sufficiently alleged retaliation in violation of the First Amendment.

### B. Eighth Amendment

Plaintiff alleges Defendants Edlinger and Ray sexually assaulted him in violation of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept.

5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Plaintiff has alleged no facts that distinguish Defendant Edlinger's instructions to "step up[,] Sweetheart, I don't bite," from the language in the cases listed above. Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Edlinger arising from his alleged verbal abuse.

Furthermore, not "every malevolent touch by a prison guard gives rise to a[n Eighth Amendment] cause of action." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Plaintiff provides no specific details about Defendant Ray's searches, but the Court of Appeals has on several occasions found no Eighth Amendment violation for pat-down searches and isolated incidents of sexual touching. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis and pressing an erect penis into the prisoner's buttocks, do not rise to the level of a constitutional violation); *Tuttle v. Carroll Cty. Detention Ctr.*, 500 F. App'x 480,

482 (6th Cir. 2012) (allegation that officer grabbed the detainee's genitals and "squeezed them really hard" during a pat-down search is too "subjective and vague" to state a claim); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (prisoner's claim that an officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not state an Eighth Amendment claim); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006); Boddie v. Schneider, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Although Plaintiff characterizes his second pat down as providing sexual gratification to either Defendant Ray or Defendant Farrell, he alleges no facts that would distinguish the facts in his case from those in the foregoing cases. Indeed, Plaintiff's allegations are more "subjective and vague" than the allegations in Tuttle. *See Tuttle*, 500 F. App'x at 482. Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Ray.

**Conclusion**

Having conducted the review under Federal Rule of Civil Procedure 21, the Court determines that Defendants Allen, Farrell, Puchase, Platte, Rideout, Morris, Kohl, Unknown Party, Fears, Becher, Beecher, Neimeic, Maiga, Leonard, Smith, Rewerts, Schiebner, Winger, Pung,

15

Garrod, Washington, Carlson, Mitchell, and Harris will be dropped from the case. Plaintiff's claims against them will be dismissed without prejudice.

Plaintiff's Eighth Amendment Claims against Defendants Edlinger and Ray will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims against Defendants Edlinger and Ray remain in the case.

An order consistent with this opinion will be entered.


Dated:   February 28, 2020           /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE